Sonya REESE, Plaintiff,

v.

JPMORGAN CHASE & CO., a Florida foreign profit corporation d/b/a JPMorgan Chase Bank, N.A., Olympia West Mortgage Group, LLC, a Florida foreign limited liability company, Chase Home Finance, LLC, a Florida foreign limited liability company, and Citimortgage, Inc., a Florida foreign profit corporation, Defendants.

Case No. 09–20912–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Oct. 15, 2009.

Catherine Ann Riggins, Esq., Catherine A. Riggins, P.A., Miami Gardens, FL, for Plaintiffs.

Rossana Navarro Mena, Esq., Dennis Michael Campbell, Esq., Clarke Silverglate & Campbell, Miami, FL, Steven Wayne Marcus, Esq., Louis M. Ursini, Esq., Peter Sobota, Esq., Ruden McClosky Smith Schuster & Russell, Fort Lauderdale, FL, for Defendants.

### ORDER GRANTING MOTIONS TO DISMISS

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Defendant JP Morgan Chase & Co., Chase Home Finance, LLC, (D.E. # 41) and Citimortgage's (D.E. # 49) Motion to Dismiss Plaintiff's Amended Complaint.[1]

## I. BACKGROUND

The facts, as set forth in the Plaintiff's Amended Complaint and taken as true for the purposes of a motion to dismiss, are as follows. Plaintiff Sonya Reese is the sole owner of real property located in Miami Gardens, Florida ("the Property") (Am. Compl. ¶ 10). In 1997, Plaintiff entered into a note and mortgage with JPMorgan Chase & Co. ("Chase"), the terms of which allowed Chase to retain a security interest in the Property ("Original Chase Mortgage") (Am. Compl. ¶¶ 13–14).

Approximately ten years later, Plaintiff desired to refinance her home mortgage; and, in late 2007, Plaintiff applied to Olympia West Mortgage Group, LLC ("Olympia") in order to do so (Am. Compl. ¶ 15). While this application was pending, Plaintiff submitted a second application for refinancing her house to Defendant JPMorgan Chase & Co.[2]

On December 20, 2007, while Plaintiff's application with Chase was still pending approval, Olympia notified Plaintiff that it had approved her application. Plaintiff subsequently entered into a mortgage and note with Olympia for the principal amount of $140,000.00 ("the Olympia Mortgage") (Am. Compl. ¶¶ 17–18). Plaintiff and Defendant Olympia closed this refinanced mortgage on January 4, 2008. The amount of $76,295.55 was deducted from the Olympia Mortgage proceeds and used to satisfy the outstanding balance of the Plaintiff's Original Chase Mortgage (Am. Compl. ¶¶ 18–20). Approximately $13,910.00 were also dispersed from the Olympia proceeds to pay Plaintiff's personal debts for car, medical and other debts.

Within one week after Plaintiff closed on the Olympia Mortgage, Plaintiff was notified by Chase that her refinance application with Chase had also been approved (Am. Compl. ¶ 21). Plaintiff discussed this second approval with Defendant Chase's employee (Mr. Rosa) who advised the Plaintiff that if she decided to enter into a mortgage with Chase, she could cancel the Olympia Mortgage by paying off the remaining balance of the Olympia Mortgage from the Chase (new) mortgage (Am. Compl. ¶ 24). On January 7, 2008, Plaintiff entered into a mortgage and note with

---

1. Plaintiff responded to Chase and Chase Home Finance's Motion on September 21, 2009 (D.E. # 51), to which Defendant replied on September 22, 2009 (D.E. # 53). Plaintiff responded to Citimortgage's Motion on September 28, 2009 (D.E. # 55), to which Citimortgage replied on October 2, 2009 (D.E. # 56).

2. Plaintiff's Amended Complaint alleges that, "[s]ince Olympia was taking longer to approve Plaintiff than she anticipated, Plaintiff subsequently applied to Chase for the refinance." (Am. Compl. ¶ 16).

Chase for a principal amount of $140,000.00 ("the Second Chase Mortgage") (Am. Compl. ¶ 27). From the Second Chase Mortgage, $75,533.63 was deducted from the loan proceeds to pay the original Chase Mortgage. Plaintiff alleges she was told by Chase employees that this amount would be used to reimburse Olympia for its payment to Chase of the Original Chase Mortgage (Am. Compl. ¶¶ 29–30). Chase did not pay this sum to Olympia (Am. Compl. ¶ 31).

On January 23, 2008, the Plaintiff paid Olympia $38,846.90 out of the proceeds she received from the Second Chase Mortgage. This sum was the exact amount of equity that she had received from the Olympia Mortgage (Am. Compl. ¶ 33). Plaintiff alleges that, to this date, Olympia has neither applied the payment to reduce the principal balance of the Olympia Mortgage nor refunded this payment to the Plaintiff (Am. Compl. ¶¶ 35–36). Both Olympia and Chase began collecting escrow payments from Plaintiff in February 2008, and March 2008 respectively. (Am. Compl. ¶¶ 37, 50). The Amended Complaint alleges that Chase and Olympia have informed Plaintiff that both Defendants paid property taxes on Plaintiff's property from Plaintiff's escrow accounts (Am. Compl. ¶¶ 52, 53); however, Miami–Dade County public records reflect that Chase did not actually pay such taxes (Am. Compl. ¶ 54).

On September 6, 2008, Plaintiff made a written request to Chase for the rescission and cancellation of the Second Chase Mortgage, which Chase has not done (Am. Compl. ¶¶ 58, 59). Plaintiff then filed the above-styled action against Defendants Chase and Olympia in this Court on April 7, 2009 alleging multiple counts against each Defendant for violations of state and federal law (D.E. # 1). Chase's Motion To Dismiss, filed May 13, 2009, was granted in part on July 14, 2009 (D.E. # 27).

Defendant Olympia failed to appear. The Clerk entered default as to Olympia on May 4, 2009 (D.E. # 8), and the Plaintiff filed a Motion for Default Judgement (D.E. # 19), which the Court denied due to a legal inaccuracy, and instructed Plaintiff to resubmit her Motion for Default Judgement and Proposed Final Judgment against Defendant Olympia within twenty (20) days from the date of the Court's Order (D.E. # 28). Plaintiff failed to comply with the Court's Order, and instead filed an Amended Complaint on July 31, 2009, including three (3) counts against Defendant Olympia (D.E. # 29). At this stage in the proceedings Olympia has yet to appear.

Plaintiff's Amended Complaint asserts nine causes of action against Defendant Chase: Count I–Truth in Lending Act (Rescission); Count II–Fraud in the Inducement; Count III–Common Law Rescission; Count IV–Real Estate Settlement Procedures Act; Count V–Florida Fair Lending Act; Count VI–Injunctive Relief; Count VII–Fair Debt Collection Practices Act (federal law); Count VIII–Florida Consumer Collection Practices Act (state law); Count IX–Unjust Enrichment. Plaintiff's Amended Complaint asserts two causes of action against Defendant Chase Home Finance: Count XIII–Fair Debt Collection Practices Act (federal law); Count XIV–Florida Consumer Collection Practices Act (state law).

Plaintiff's Amended Complaint includes three counts against Defendant Olympia: Count X–Fair Debt Collection Practices Act (federal law); Count XI–Florida Consumer Collection Practices Act (state law); Count XII–Unjust Enrichment. Finally, Plaintiff's Amended Complaint includes two counts against Defendant Citimortgage: Count XV–Fair Debt Collection Practices Act (federal law); and Count

XVI–Florida Consumer Collection Practices Act (state law).

Chase and Chase Home Finance filed a Motion to Dismiss (D.E. # 41) Counts I–VII and XIII–XIV, for a failure to state a claim upon which relief can be granted. Citimortgage filed a separate Motion to Dismiss (D.E. # 49) Counts XV and XVI for failure to state a claim upon which relief can be granted.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). To do so, the plaintiff must include in the complaint more than "a formulaic recitation of the elements of a cause of action." *Id.* at 1965. "While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable, the factual allegations must be enough to raise a right to relief above the speculative level." *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir.2007) (citing *Bell Atl. Corp.,* 550 U.S. at 556, 127 S.Ct. 1955) (internal quotations omitted). In deciding a motion to dismiss, the court must accept the complaint's allegations as true and construe them in the light most favorable to the plaintiff. *See M.T.V. v. Dekalb County Sch. Dist.,* 446 F.3d 1153, 1156 (11th Cir. 2006). Finally, "[i]n analyzing the sufficiency of the complaint, [the Court] limit[s][its] consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir.2004).

## III. ANALYSIS

### A. Rescission Pursuant to TILA (Count I) and Damages (Count V) Under the Florida Fair Lending Act

Plaintiff's Amended Complaint asserts that, due to Chase's failure to make certain disclosures to the Plaintiff prior to the closing of the Second Chase Mortgage, Chase violated the federal Truth in Lending Act ("TILA") (Am. Compl. ¶ 77(a)-(b)). Plaintiff alleges Chase required Plaintiff to pre-pay in advance, from loan proceeds county taxes equal to five (5) times the monthly escrow, and hazard insurance premium that was equal to seven (7) times the monthly escrow payment designated for hazard insurance premium. (Am. Compl. ¶ 81–82). Plaintiff also alleges that Chase committed further violations of TILA by "including terms that required Plaintiff to make more than 2 periodic payments, in advance from the loan proceeds, for insurance and taxes," (Am. Compl. ¶ 83), and "extending a loan to Plaintiff ... without regard to Plaintiff's repayment ability ..." (Am. Compl. ¶ 85). Plaintiff seeks rescission of the Second Chase Mortgage (Count I) as well as damages, attorney's fees, and costs (Count V).

■ "TILA is a complex law with different kinds of disclosure requirements." *Toscano v. Ameriquest Mortgage Co.,* 2007 WL 3125023, at *5 (E.D.Cal. Oct. 24, 2007); *see also* 15 U.S.C. §§ 1638(a)(1)-(15). TILA "requires creditors to provide consumers with 'clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights,' including the right of rescission." *Velardo v. Fremont Inv. & Loan,* 298 Fed.Appx. 890, 892 (11th Cir.2008). In Plaintiff's Amended Complaint, Plaintiff's claim for relief against Chase in Count I is for rescission under the 1994 Home Ownership and Eq-

uity Protection Act ("HOEPA") amendments to TILA. 15 U.S.C. § 1602(aa). Although Plaintiff makes no mention of HOEPA, Plaintiff asserts that this is a "high cost" home loan in which "[t]he total points and fees paid by Plaintiff at the closing of the Chase refinance exceeded 8% of the total loan amount." Under HOEPA there are enhanced disclosure requirements on lenders who make "high cost" loans.

In order to qualify for the remedies and protections HOEPA offers however, there are requirements which must be met. In *Lopez v. Delta Funding Corporation,* 1998 WL 1537755, at *5 (E.D.N.Y. Dec. 23, 1998), the Court set forth the five requirements for a loan to fall under HOEPA's protections. First, the mortgage loan must be a "consumer credit transaction," as defined in 15 U.S.C.A. § 1602(h). Second, the mortgage loan must be a consumer credit transaction with a "creditor," as defined in 15 U.S.C.A § 1602(f). Third, the mortgage loan must be secured by the "consumer's principal dwelling," as defined with reference to the definition of "dwelling" in 15 U.S.C.A. § 1602(v). Fourth, the mortgage loan must be a second or subordinate residential mortgage, not a "residential mortgage transaction," a "reverse mortgage transaction," or transaction under an "open credit plan." Fifth, the annual percentage rate of interest at consummation of the loan transaction must "exceed by more than ten percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the credit," or, the total "points and fees" payable by the borrower at or before closing must exceed the greater of 8% of the total loan amount, or $400. 15 U.S.C.A. § 1602(aa)(1).

■ In the instant Motion to Dismiss, Chase argues that Plaintiff's HOEPA claims should be dismissed because Plaintiff's transaction with Chase shows that this is not a second or subordinate residential transaction, and that Plaintiff does not qualify for HOEPA's protections because Plaintiff's loan is not a "high cost" loan. With respect to the first argument, the Court notes that Plaintiff's Amended Complaint clearly states "Mr. Rosa advised Plaintiff that she could cancel the Olympia loan by using the proceeds from the Chase loan to pay Olympia back." (Am. Compl. ¶ 24) Plaintiff also states "Ms. Amy Smith of Chase advised Plaintiff that Chase would forward $75,533.63 to Olympia as reimbursement for Olympia's pay-off of Plaintiff's First Chase Mortgage." (Am. Compl. ¶ 30). In both instances, Plaintiff refers to the Chase loan as replacing her initial loan, giving Plaintiff the benefit of a refinanced loan. In Plaintiff's Response to Defendant's Motion to Dismiss, Plaintiff contends that because she acquired:he Olympia mortgage loan on December 20, 2007, and the Chase Mortgage loan on January 7, 2008, "clearly, the second Chase mortgage is second and subordinate to the Olympia Mortgage." (Pl.'s Resp. to Mot. Dismiss 4). While the Chase Mortgage may have come second in time, it was meant to refinance the first mortgage with Chase. The mortgage cannot be both second and subordinate, and at the same time replace the initial loan through an action for refinancing.

■ Chase next argues that Plaintiff's loan falls short of benefitting from HOEPA protections because Plaintiff's loan is not a "high cost" loan. In order to qualify for HOEPA protections the loan must be one defined as a "high cost" loan. A loan is a "high cost" loan when the total "points and fees" payable by the borrower at or before closing must exceed the greater of

8% of the total loan amount, or $400. 15 U.S.C.A. § 1602(aa)(1). Points and fees is a defined term under 15 U.S.C.A. § 1602(aa)(4) and Reg. Z § 226.32(b)(1), from which certain charges must be deducted.[3]

In Plaintiff's Amended Complaint, Plaintiff asserts that the total points and fees she paid at the refinance closing were "$20,956.74, less $792.50 paid for future county taxes." (Am. Compl. ¶ 74). Plaintiff further asserts that the total points and fees paid by Plaintiff at the closing of the Chase Refinance exceeded 8% of the total loan amount. (Am. Compl. ¶ 75). Plaintiff's statement is conclusory and does not provide the Court with any guidance, or mathematical equation used in reaching this conclusion. Plaintiff makes no other allegations which demonstrate how this amount fits the statutory tests, nor does Plaintiff engage in a 15 U.S.C. § 1602(aa)4 analysis. Reviewing the attached HUD–1 statement signed by Plaintiff, it reflects that Plaintiff used $13,910 to pay off other lenders and a medical collection agency. (Exhibit A at ln. 1301–1305). Only $1,925 in points were paid, and a total of $5,121.74 in other closing costs were paid. (Exhibit A at ln. 802).

In Plaintiff's Response, Plaintiff argues that under Sec. 226.4(a) of Regulation Z, the finance charge includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. (Pl.'s Resp. to Mot. Dismiss 4). Plaintiff asserts that at trial the evidence will show that as a condition of the extension of credit,

Plaintiff was required to pay-off the obligations reflected in lines 1301 through 1305 on the HUD–1. (Exhibit A at ln. 1301–1305). However, that is not sufficient to establish that Plaintiff's loan was a "high cost" loan, entitled to HOEPA protections. In Plaintiff's Response to the Motion to Dismiss, Plaintiff does not cite to any case law, other than one to assert that Plaintiff was not required to include calculations in her Complaint. *Plumbers v. Vertex,* 932 F.2d 1443, 1448 (11th Cir. 1991) (A complaint need not specify in detail the precise theory giving rise to recovery). When faced with a Motion to Dismiss, a plaintiff must prove "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). To do so, the plaintiff must include in the complaint more than "a formulaic recitation of the elements of a cause of action." *Id.* at 1965. Thus, the Court concludes that Count I be dismissed with prejudice.

 In Count V of Plaintiff's Amended Complaint, Plaintiff asserts a claim under Florida's Fair Lending Act ("FFLA"), Fla. Stat. § 494.00796. There is a significant difference between HOEPA and the FFLA, and that is that no private cause of action exists under the FFLA. Under the FFLA, the Florida Financial Commission ("Commission") and the Office of Financial Regulation of the Commission, are responsible for the administration and enforcement of the FFLA. The FFLA does not provide any private right of action nor does it provide for recovery of any form of

**3.** 15 U.S.C.A. § 1602(aa)(4) provides "points and fees shall include—(A) all items included in the finance charge, except interest or the time-price differential; (B) all compensation paid to mortgage brokers; (C) each of the charges listed in section 106(e)(except an escrow for future payment of taxes), unless—(I)

the charge is reasonable; (ii) the creditor receives no direct or indirect compensation; and (iii)the charge is paid to a third party unaffiliated with the creditor; and (D) such other charges as the Board determines to be appropriate."

consequential damages; it provides that a lender violating the FFLA will forfeit the entire interest charges on the "high cost" home loan. Fla. Stat. § 494.00796. However, Plaintiff has not adequately pled that the loan at issue is a "high cost" home loan.

Plaintiff cites to *Davis v. Travelers Indemnity Co.*, 800 F.2d 1050, 1051 (11th Cir.1986), which holds that "when a statute creates a duty for the benefit of members of the class of persons the statute was designed to protect, a common law cause of action has been held to arise by virtue of an alleged violation of that statute," In Plaintiff's Response to the instant Motion to Dismiss, Plaintiff asserts that, "without a doubt borrowers of high cost home loans are the class of individuals that the FFLA was designed to protect." (Pl.'s Resp. to Mot. Dismiss 4). This argument fails on two grounds. First, Plaintiff has not established that she is a borrower of a "high cost" home loan. Thus, even if *Davis* created such a common law cause of action, Plaintiff would not qualify for it. *Id.* Second, Plaintiff does not persuade the Court that the FFLA was designed to protect individuals, when in fact that statute gives the enforcement mechanisms to two Florida regulatory commissions.

Plaintiff also cites *Peters v. Ojeda*, 902 So.2d 219 (Fla. 3d DCA 2005) where the Third District Court of Appeal remanded the case, finding there was a genuine issue as to whether to whether a loan was used for business or personal purposes. However, while there was a counterclaim that asserted the FFLA, the decision itself does not address a private right of action.

■ Plaintiff overlooks that Florida has adopted the approach articulated in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) for determining whether a private remedy should be implied in a statute that does not expressly provide one.

Three of the four factors enumerated in *Cort* are germane to state legislation: "(1) whether the plaintiff is one of the class for whose especial benefit the state was enacted; (2) whether there is any indication, either explicit or implicit, of a legislative intent to create or deny such a remedy; [and] (3) whether judicial implication is consistent with the underlying purposes of the legislative scheme[.]" *Fischer v. Metcalf,* 543 So.2d 785 (3d DCA 1989) (citing *Cort,* 422 U.S. at 78, 95 S.Ct. 2080). There is nothing in the legislative history which suggests that the Act was created for the benefit of a particular class. On the contrary, the legislative history supports the view that the Act was designed to benefit the public at large, by empowering Florida's Office of Financial Regulation to bring an action in the name and on behalf of the State of Florida, against any person who violates the Act. *California v. Sierra Club,* 451 U.S. 287, 294–95, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981).

There is no indication in the legislative history that suggests an intent to create a right to damages. In fact, there is direct evidence to the contrary. Chase points the Court to amendments proposed in 2008 to the FFLA, by way of House Bill 979 and Senate Bill 2846. See H.B. 979, 2008 Leg., Reg. Sess. (Fla.2008); S.B. 2846, 2008 Leg., Reg. Ses. (Fla.2008). Both these bills sought to add civil remedies for the violations of FFLA, and were never enacted. Therefore, it is clear that the Florida Legislature never intended to provide a right of action for damages, and Count V of Plaintiff's Amended Complaint must be dismissed with prejudice.

**B. Fraud in the Inducement (Count II)**

Plaintiff alleges in Count II, that a "material factor in Plaintiff's decision to proceed with the [Second Chase Mortgage]" was that "Chase promised Plaintiff that

she could use the loan proceeds from the [Second Chase Mortgage] to pay-off the [Olympia Mortgage]." (Am. Compl. ¶¶ 91–93). Plaintiff contends that Chase's promises were false and that she is entitled to damages for fraud in the inducement. Chase asks this Court to dismiss Count II because Plaintiff's claim is barred by the Bank Statute of Frauds which prohibits actions on credit agreements unless the same is in writing, signed by the creditor and debtor. Fla. Stat. § 687.0304. (Def.'s Mot. to Dismiss 7). Chase further argues that the economic loss rule bars Plaintiff's claim because Plaintiff's "claims arise from contract . . . [and] the contract evidenced by the note and mortgage controls the rights, duties, and obligations of the parties", and finally that Plaintiff fails to plead fraud with particularity, as required by Fed.R.Civ.P. 9(b). (Def.'s Mot. to Dismiss 8).

The Court finds that Plaintiff's claim for fraud in Count II fails under each of the theories Chase propounds. The crux of Plaintiff's claim for fraud is that "[t]he ability to pay-off of the [Olympia Mortgage] was a material factor in Plaintiff's decision to proceed with the Chase Refinance." (Am. Compl. ¶ 93). Plaintiff asserts that "Chase employees made verbal misrepresentations to her, causing her to believe that Chase was going to loan her $140,000 and that she could cancel the Olympia loan with the proceeds from the Chase loan, inducing her to proceed with the Chase loan." (Pls. Resp. Mot. To Dismiss 9–10).

 To sufficiently allege a claim for fraud in the inducement, a plaintiff must allege the exact statements and alleged misrepresentations; the time and place of each such misrepresentation and who made it; the substance of the representations and how it misled the plaintiff; and the defendant's gain due to the alleged

fraud. *See Ambrosia Coal & Constr. Co. v. Pages Morales,* 482 F.3d 1309, 1316–17 (11th Cir.2007). Specifically, the heightened pleading standard "serves an important purpose in a fraud action by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross Blue Shield of Fla. Inc.,* 116 F.3d 1364, 1370–71 (11th Cir.1997). Plaintiff identifies two individuals who allegedly made statements that induced her to act, but does not provide the time, place or precise statements that were made. Given Plaintiff's failure to comply with Fed. R.Civ.P. 9(b), requiring the circumstances constituting fraud or mistake to be pled with particularly, the Court finds that the Plaintiff has not sufficiently alleged the existence of fraud.

 The Court finds that Plaintiff's claim for fraud also fails under the economic loss rule. "The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Indemnity Ins. Co. of North Am. v. Am. Aviation, Inc.,* 891 So.2d 532, 536 (Fla.2004). "The economic loss rule was designed to prevent a party to a contract from 'circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort.'" *Id.* Although, generally under the economic loss rule, "parties in privity of contract are prohibited from recovering under tort theories for economic damages[,]" *id.* at 537, actions for such recovery have been permitted in certain limited causes of action "based upon torts independent of the contractual breach even though there exists a breach of contract action." *Id.*

 Fraudulent inducement has been found in certain circumstances to be an

exception to the economic loss rule because it is "an independent tort in that it requires proof of facts separate and distinct from the breach of contract." *Id.* (citations omitted); *see also Vitola v. Paramount Automated Food Servs., Inc.,* 2009 WL 980296, at *1 (S.D.Fla. Apr. 9, 2009). In analyzing whether a claim of fraudulent inducement is barred by the economic loss rule, "[t]he court must determine if the alleged fraud is an act of performance or in a term of the bargain." *Warfield v. Stewart,* 2007 WL 3378548, at *4 (M.D.Fla. Nov. 12, 2007) (citing *D & M Jupiter, Inc. v. Friedopfer,* 853 So.2d 485, 488 (Fla. 4th DCA 2003)). If it is alleged that the fraud relates to the performance of the agreement, then the economic loss rule will limit the parties to their contractual remedies. *Id.* If the alleged fraud, however, "relates to a misrepresentation which caused the plaintiff to enter into the agreement, then such fraud would be fraud in the inducement, which will not be barred by the economic loss rule." *Id.* In the case before the undersigned, Plaintiff has pled that "[p]rior to Plaintiff's refinance of [the Property] with Chase, by executing a note in the amount of $140,000.00 and the Second Chase Mortgage . . ., Chase promised Plaintiff that she could use the loan proceeds from the Chase Refinance to pay-off the [Olympia Mortgage]." (Am. Compl. ¶ 92). Plaintiff claims this was fraudulent because Chase did not remit the $75,533.63 of the $140,000, as was allegedly promised to Olympia as was allegedly promised.

 Where the misrepresentations relate to the breaching party's performance of a contract, these misrepresentations are "interwoven and indistinct from the heart of the contractual agreement" and do not give rise to an independent tort. *Hotels of Key Largo v. RHI Hotels, Inc.,* 694 So.2d 74 (Fla. 3d DCA 1997); *see Clayton v. State Farm Mut. Auto. Ins. Co.,* 729 So.2d

1012 (Fla. 3d DCA 1999) (stating that where the alleged fraudulent misrepresentation is inseparable from the essence of the parties' agreement, the economic loss rule still applies; and, holding that plaintiffs allegations of pre-contract misrepresentations, which were directly related to the alleged breach, did not support an independent tort action).

Plaintiff cites to *Bankers Mutual Capital Corp. v. U.S. Fidelity & Guaranty Co., et al.,* 784 So.2d 485, 489 (Fla. 4th DCA 2001), for the proposition that a fraud in the inducement claim is not barred where the alleged fraud pertains to a term of the contract and is relied upon in inducing the completion of the agreement, While in *Bankers* the Court did find that the economic loss rule did not bar Plaintiff's claims, the Court also found that Plaintiff pleaded the case with a level of particularity absent in the instant case. *Bankers,* 784 So.2d at 489–490. Unlike in *Bankers,* where the fraud alleged was "clear and specific," the fraud alleged in the instant case is one which flows from the failure to perform the heart of the agreement, and is not alleged with clarity or specificity. *Id.*

While Plaintiff claims that the Chase employee's misrepresentations induced her to enter into this loan, the alleged fraud is based on the performance of Plaintiff's agreement with Chase, and Chase's purported failure to properly perform falls under the express terms of the contract. Plaintiff does not allege promises that were made above and beyond the terms of the agreement. Essentially Plaintiff is arguing that she would not have entered into the contract had Plaintiff known that Chase was not going to perform under the terms of the agreement. If the Court follows Plaintiff's reasoning, then any time a party to a contract is dissatisfied with the execution of the contract, they too would have a claim for fraud in the induce-

ment, because most people enter into contracts under the assumption that both parties will perform as agreed in good faith. This argument is not persuasive. The Court finds that the alleged misrepresentations are indistinct from the heart of the contractual agreement and do not give rise to an independent tort.

Finally, Chase argues that Plaintiff's claim for fraudulent inducement should be dismissed because it is barred under Florida's Bank Statute of Frauds. Specifically "a debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Fla. Stat. § 687.0304. The Bank Statute of Frauds purports to avoid misunderstandings, facilitate open communications, and to improve ... "certainty and stability ..." in credit transactions. House of Representatives of Florida, Comm. On Commerce, Final Staff Analysis & Economic Impact Statement on H.B. 878, at 1 (1989).

Plaintiff argues that "the credit agreement that is at the center of Plaintiff's fraud in the inducement claim, is the $140,000 loan that Chase promised Plaintiff, which was reduced to writing pursuant to the note and mortgage entered into on January 7, 2008. (Resp. To Mot. to Dismiss Am. Compl. 7). Even if Plaintiff's fraud claim was not barred by the Bank Statute of Frauds, because as Plaintiff contends, the agreement is reduced to writing, the Court has already concluded that Plaintiff's fraud claim is indistinct from the contractual agreement, and therefore fails. Accordingly, Chase's Motion to Dismiss Count II is granted with prejudice.

## C. Common Law Rescission (Count III)

Chase asserts that Count III, which asks for the common-law rescission of the Second Chase Mortgage, must be dismissed because Plaintiff claims she has not derived a benefit from the Chase Refinance. (Mot. To Dismiss 10). Plaintiff asserts that a rescission of the Chase Refinance would return Plaintiff and Chase to the same positions that they were in before entering into the Chase Refinance. (Am. Compl. ¶ 116). However, throughout the Amended Complaint, Plaintiff acknowledges that she received an equity payment from the Chase loan transaction on January 23, 2009, which she then used to pay Olympia. (Am. Compl. ¶ 33). It is clear that Plaintiff received at least $38,846.90 from Chase which was used to pay other debts. This is a clear benefit. Plaintiff's assertion that she "has not derived a benefit from the Chase loan, because, in detrimental reliance on Chase Lender's false promises, Plaintiff issued a payment to Olympia in the amount of $38,846.90, which Olympia has failed or refused to credit to the Olympia loan or refund to Plaintiff" is without merit. (Pl.'s Resp. Mot. to Dismiss 11). Regardless of how Olympia handled Plaintiff's payment of the $38,846.90, or whether Plaintiff has received credit for her payment, this has no effect on the fact that Plaintiff clearly derived a benefit from Chase. Plaintiff may have a cause of action against Olympia for failure to credit her money, but Chase is not responsible for the troubles Plaintiff has confronted with Olympia. Accordingly, Chase's Motion to Dismiss Count III is granted with prejudice.

## D. Real Estate Settlement Procedures Act (Count IV)

In Count IV of Plaintiff's Amended Complaint, Plaintiff alleges that Chase Home Finance violated RESPA Section 2605(g) and that she is entitled to damages under 2605(f). (Am. Compl. ¶¶ 129, 137). Plaintiff claims that Chase Home Finance

was responsible for the payment of the county taxes on the properly and the hazard insurance premium. (Am. Compl. ¶ 125). Both were to be paid from the escrow payments Plaintiff was required to make by Chase Refinance. (Am. Compl. ¶ 122). Chase Home Finance, however, did not make the payments. (Am. Compl. ¶ 127). Instead, Citimortgage paid Plaintiff's county taxes and hazard insurance premium from Plaintiff's escrow account with Olympia. (Am. Compl. ¶ 126). Plaintiff claims that Chase Home Finance's failure to pay the county taxes and hazard insurance premium violated Section 2605(g). Plaintiff further alleges that Plaintiff received an economic loss from Chase's failure to pay the taxes and premium because she could have retained the escrow payments for her own use and benefit throughout the year. (Am. Compl. ¶ 139). Chase Home Finance responds that it is not liable under Section 2605 because Citimortgage made the payments. Therefore the payments never became due and Plaintiff did not sustain any actual damage. Plaintiff does not allege any cases or legal authority to support her arguments.

The Court agrees with Chase Home Finance. Section 2605(f) provides that a party who violates Section 2605 may recover actual damages and additional damages not to exceed $1,000 if the Court finds a pattern or practice of noncompliance. 12 U.S.C. § 2605(f). Here, Plaintiff has not established a practice of non-compliance, thus the Court only considers whether there are actual damages. Plaintiff admits that Citimortgage made the tax and insurance payments timely, before any penalties attached to the property. Therefore there was no actual damage to Plaintiff. Plaintiff's allegations that she could have retained the escrow payments for her own use and benefit throughout the year is not actual damage resulting from Chase Home

Finance's failure to pay the mortgage. Because Plaintiff does not allege any damages she has no claim under Section 2605(g). *See Spencer v. Hutchens,* 471 F.Supp.2d 548, 554 (M.D.N.C.2006).

Normally this Court would dismiss Count IV with leave to amend and allege actual damage. However, Plaintiff has already alleged in paragraph 138 of her Amended Complaint that Citimortgage paid the taxes and insurance premium, in effect pleading in paragraph 138 that she has suffered no economic harm. (Am. Compl. ¶ 138). Count IV is therefore dismissed with prejudice.

**E. Injunctive Relief (Count VI)**

█ In Count VI, Plaintiff's Amended Complaint asserts that Plaintiff's refinance transaction with Chase, including the promissory note and the mortgage entered into on January 7, 2008 ("Chase Refinance") is subject to injunctive relief. (Am. Compl. ¶ 160). Plaintiff alleges that the Chase Refinance requires her to make monthly escrow payments designated for county taxes and hazard insurance premium, and that those payments were not for those purposes. (Am. Compl. ¶ 161–162). Plaintiff claims that Plaintiff's escrow required by the Chase Refinance is not being used to pay her annual taxes and that they should be enjoined from collecting any further escrow payments since Plaintiff is unnecessarily losing use of the monies paid, including the interest she could have earned thereon. (Am. Compl. ¶ 168–169).

Chase argues that this count should be dismissed because Plaintiff has failed to establish the burden of persuasion as to each of the four prerequisites for a preliminary injunction (Mot. To Dismiss 15). For the reasons stated below, the Court agrees with Chase.

�W�W A preliminary injunction is "an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the burden of persuasion as to each of the four requisites." *See Mc-Donald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir.1998). The movant must show: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Id.* "Mere injuries, however substantial, in terms of money, time and energy necessary expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *U.S. v. Jefferson County,* 720 F.2d 1511, 1520 (11th Cir.1983).

The case law is well settled in this area, and Plaintiffs' alleged loss of the use of monies paid to Chase do not amount to irreparable harm which cannot be remedied at a later date. While Plaintiff alleges that she will suffer irreparable harm, Plaintiff does not elucidate further what that harm is. Were Plaintiff to succeed on any of the other asserted claims in the Amended Complaint, damages could be awarded, and Plaintiff's alleged harm would be remedied. Moreover, Plaintiff's allegation of substantial likelihood of success on the merits "because it is not conscionable to require Plaintiff to continue to make escrow payments to both Citimortgage and Chase Home Finance" is conclusory. Plaintiff does not demonstrate how or why Plaintiff is likely to succeed on the merits, nor does she provide facts to support her allegations. A party's failure to demonstrate a "substantial likelihood of

success on the merits" may defeat the party's claim, regardless of the party's ability to establish any of the other elements. *Church v. City of Huntsville,* 30 F.3d 1332, 1342 (11th Cir.1994). In the instant case, Plaintiff has not established any of the four elements necessary to grant temporary injunctive relief. For these reasons, Count VI in Plaintiff's Amended Complaint must be dismissed with prejudice.

**F. Fair Debt Collection Practice Act (Counts VII & XIII)**

In Counts VII and XIII, of the Amended Complaint, Plaintiff asserts that she is entitled to relief against Chase and Chase Home Finance under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Plaintiff alleges that Chase & Chase Home Finance incorrectly reported a false principal amount to the credit reporting bureaus. (Am. Compl. ¶¶ 186, 294). Plaintiff further claims that Chase and Chase Home Finance used false representations and deceptive or misleading representations or means to collect or attempt to collect a debt. (Am. Compl. ¶¶ 187, 295).

Chase and Chase Home Finance make several arguments in support of their Motion to Dismiss Count VII and Count XIII. They first argue that Plaintiff's claim under the FDCPA is barred by the statute of limitations. (Mot. To Dismiss 17–18). Defendants next argue that Count VII and XIII should be dismissed because neither Chase nor Chase Home Finance is a debt collector under the FDCPA, that Plaintiff did not allege the specific unfair collection actions utilized by Chase and Chase Home Finance, and finally that Plaintiff failed to support her allegations of false and misleading statements with sufficient facts. (Mot. To Dismiss 19–22).

As to Defendants' first argument, in Plaintiff's response to the Motion to Dismiss, the Plaintiff states Count VII and Count XIII are not barred by the state of limitations because the statute of limitations begins to run on the date of each violation, and not from the date of the first violation. (Pl.'s Resp. to Mot. Dismiss 17). Plaintiff further alleges that Chase and Chase Home Finance incorrectly reported a principal amount due on the Second Chase Mortgage from January 2008 through December 2008, and that each time Chase and Chase Home Finance reported the alleged incorrect balance, a new cause of action accrued. (Pl.'s Resp. to Mot. Dismiss 17–18).

In *Maloy v. Phillips*, 64 F.3d 607 (11th Cir.1995), the Eleventh Circuit Court of Appeals considered whether the statute of limitations for an FDCPA action commenced on the date the debt collection letter was mailed to the debtor, or the date the letter was received. *Id.* at 608. The Eleventh Circuit held that the date of mailing was the debt collector's last opportunity to comply with the FDCPA, and that the date of mailing was a better and more practical approach because it provided a date that was easy to determine, ascertainable by both parties, and easily applied. *Id.* Moreover, where statements concerning the status of a debt are new communications concerning an old claim, the statements do not start a fresh statute of limitations period. *See Nutter v. Messerli & Kramer, P.A.*, 500 F.Supp.2d 1219 (D.Minn.2007).

Plaintiff fails to provide the specific dates between January 2008 and December 2008 when she allegedly received notices. If the notices received after January 2008 were concerning the same debt, Plaintiff's claim under the FDCPA appears to be untimely. Plaintiff had notice of the alleged violations since January of 2008, yet did not bring a claim until almost a year and a half later, well beyond the one-year period within which to bring claims under the FDCPA. However, assuming Plaintiff's claim was timely, the Court dismisses Counts VII and Count XIII with prejudice for the reasons stated below.

Chase and Chase Home Finance next argue that the Court should dismiss Plaintiff's FDCPA claim because neither Chase nor Chase Home Finance is a debt collector as defined under FDCPA. Plaintiff alleges that, because Chase is using a separate name to collect its debt, Chase falls under the FDCPA's definition of a debt collector. (Pl.'s Resp. Mot. Dismiss 18). This, however, is not sufficient to bring Chase or Chase Home Finance under the definition of "debt collector" according to 15 U.S.C. § 1692a(6).

In order to plead adequately under the FDCPA, the Plaintiff must sufficiently allege that Chase is a "debt collector." *See Monroe v. CitiMortgage, Inc.*, 2007 WL 1560194 at *2 (M.D.Fla. May 29, 2007). The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Under the FDCPA, consumer's creditors, a mortgage servicing company, or an assignee of a debt are not considered "debt collectors," as long as the debt was not in default at the time it was assigned. *See Monroe*, 2007 WL 1560194 at *2 (citing *Belin v. Litton Loan Servicing, L.P.*, 2006 WL 1992410 at *2 (M.D.Fla.2006)).

Although Plaintiff alleges in Plaintiff's Amended Complaint that Chase and Chase Home Finance are debt collectors, Plaintiff also states that Chase and Chase Home

Finance were the creditor and mortgage servicer, respectively. (Am. Compl. ¶¶ 47, 50). The Amended Complaint clearly establishes that neither Chase, nor Chase Home Finance are "debt collectors" as contemplated by the statute which explicitly excludes a consumer's creditors, and mortgage servicing companies. 15 U.S.C. § 1692a(6). Plaintiff's attempt to bring Chase under the FDCPA by applying the "false name exception" is equally unavailing.

██ In Plaintiff's Response to Defendant's Motion to Dismiss, Plaintiff states "[s]ince Chase lender used another name, to wit: Chase Home Finance, LLC to collect the debt that is the subject of this action, Chase Lender is a debt collector as generally defined by the FDCPA" (Pls. Resp. To Mot. to. Dismiss 18–19). "Under the 'false name exception' a creditor becomes subject to the FDCPA if, 'in the process of collecting his own debts, [the creditor] uses any name other than his own which could indicate that a third person is collecting or attempting to collect such debts.'" *Williams v. Citibank, N.A.*, 565 F.Supp.2d 523, 529 (S.D.N.Y.2008) (quoting *Mazzei v. Money Store*, 349 F.Supp.2d 651, 658–60 (S.D.N.Y.2004)). The false name exception is triggered if the least sophisticated consumer would have the false impression that a third party was collecting the debt. *Id.*

In Plaintiff's Amended Complaint, Plaintiff acknowledges Chase and Chase Home Finance are separate entities. (Am. Compl. ¶¶ 3, 5, 47). Moreover, Plaintiff has failed to plead facts indicating any scheme by Chase to use another name other than its own in collecting the debt. Plaintiff has not cited any cases that supports its argument, and the case Plaintiff has cited is inapposite. For instance, in *Kaltenbach v. Richards,* 464 F.3d 524, 527 (5th Cir.2006), the Court liberally construed the Complaint to read that the defendant, an attorney who was hired to initiate a foreclosure action against plaintiff, was a debt collector under the general definition. Plaintiff contends this supports its position that "a party who satisfies 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the entire FDCPA, even when enforcing security interests." (Pl.'s Resp. to Mot. Dismiss 20). However, the facts of *Kaltenbach* are distinguishable from those of the case at bar. In *Kaltenbach,* defendant was an attorney, acting on behalf of his client in a foreclosure action against plaintiff. He moved to dismiss the case arguing he was not a debt collector under the FDCPA. Although plaintiff, a *pro se* litigant, did not allege that the attorney was a debt collector under the more general definition contained in section 1692a(6), the Court nonetheless read the complaint to assert that he was a debt collector. In the instant case, Plaintiff is represented by competent Counsel. The Court sees no reason why it needs to liberally construe poorly plead allegations in Plaintiff's Amended Complaint.

██ Finally, Chase argues the Court should dismiss Count VII and XIII because Plaintiff failed to specifically allege Chase's purported violations. (Mot. to Dismiss 21). Chase further states "the Second Chase Mortgage Plaintiff executed authorizes the collection of mortgage payments due under the contract and escrow payments, from which county taxes and hazard insurance would be paid. (Am. Compl. ¶¶ 27, 49, 50). In her Response to Defendant's Motion to Dismiss, Plaintiff states "Chase 1) incorrectly reported the amount of the debt to credit bureaus, reporting higher amount due than the actual amount due; 2) collected unauthorized interest, because it collected interest on an amount that was never loaned to Plaintiff;

3) collected escrow payments from Plaintiff, knowing that its mortgage was secondary to the Olympia mortgage; and 4) threatened to take adverse action against Plaintiff for a default that did not exist." (Pl.'s Resp. to Mot. Dismiss 20).

A complaint warrants dismissal if a plaintiff fails to specifically identify how conduct was unfair or unconscionable under 15 U.S.C. § 1692f. *Taylor v. Heath W. Williams, LLC,* 510 F.Supp.2d 1206, 1217 (N.D.Ga.2007). Plaintiff does not plead sufficient facts to show how the alleged misconduct was unfair' or unconscionable. Nor does Plaintiff state what type of adverse action was threatened, or specifically plead which fees were unauthorized. Since Plaintiff did not allege these facts in her Amended Complaint, the Court cannot consider them. Accordingly, for the reasons stated above, Defendant Chase and Chase Home Finance's Motion to Dismiss Count VII and XIV is granted with prejudice.

**G. Unjust Enrichment (Count IX)**

 Although Chase did not move to dismiss Count IX of Plaintiff's Amended Complaint, the Court *sua sponte* dismisses Count IX. In Florida, in order to plead a case for unjust enrichment, the essential elements are: (1) a benefit conferred upon a defendant by the plaintiff; (2) the defendant's appreciation of the benefit; and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof. *Vega v. T–Mobile USA, Inc.,* 564 F.3d 1256 (11th Cir.2009). Moreover, where there is an express contract between the parties, claims arising out of that contractual relationship will not support a claim for unjust enrichment. *Moynet v. Courtois,* 8 So.3d 377 (Fla. 3d DCA 2009). In the instant case, Plaintiff's claim for unjust enrich-

ment against Chase arises out of the Second Chase Mortgage. (Am. Compl. ¶¶ 211–214). Therefore, the Court finds that since Plaintiff's claim arises out of a contractual relationship with Chase, Plaintiff's claim fails for failure to state a claim upon which relief can be granted. Accordingly, Count IX is dismissed with prejudice.

**H. Florida Consumer Collection Practices Act (Counts VIII and XIV)**

 In Counts VIII and XIV, Plaintiff's Amended Complaint asserts that she is entitled to relief against Chase and Chase Home Finance respectively under the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq.* Plaintiff alleges that Chase and Chase Home Finance are liable under provisions stating that "in collecting a consumer debt, no person shall ... claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist." (Am. Compl. ¶¶ 194, 302). Chase Home Finance argues that the Court should dismiss Count XIV because Plaintiff asserts only conclusory allegations that Chase Home Finance violated section 559.72(9). (Mot. to Dismiss 23). The Court agrees with Chase Home Finance and although Chase did not move to dismiss Count VIII, the Court will do so *sua sponte* for the reasons stated below.

 To plead a FCCPA claim, a party must allege "knowledge or intent by the debt collectors in order to state a cause of action." *Kaplan v. Assetcare, Inc.,* 88 F.Supp.2d 1355, 1363 (S.D.Fla.2000). Simply pleading that Defendant had knowledge is not enough. Under Florida law, "the use of the word 'knows' requires actual knowledge of the impropriety or overreach of a claim." *In re Cooper,* 253 B.R.

286, 290 (N.D.Fla.2000). A pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In Plaintiff's Response to Defendant's Motion to Dismiss, Plaintiff states "Plaintiff is not required to prove her entire case in her Complaint, she is only required to put Chase on notice of her claims. Thereafter, Plaintiff should be allowed to conduct discovery to develop her case. (Pl.'s Resp. to Mot. to Dismiss 21). Plaintiff cites no case law to support this contention. Nowhere in Plaintiff's Amended Complaint does Plaintiff plead facts that Chase or Chase Home Finance had knowledge that it was pursuing a debt that it was not legally entitled to. Moreover, Plaintiff fails to identify in what way Chase Home Finance specifically threatened to take adverse action against Plaintiff. Plaintiff's Amended Complaint only contains conclusory allegations, and is not supported by the facts necessary to establish her case, or put Chase and Chase Home Finance on notice as to the specific alleged violations. Accordingly, Chase Home Finance's Motion to Dismiss Count XIV is granted with prejudice, and the Court dismisses Count VIII with prejudice *sua sponte.*

## I. Fair Debt Collection Practice Act Against Citimortgage (Count XV)

In Count XV of the Amended Complaint, Plaintiff asserts that she is entitled to relief against Citimortgage under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Plaintiff alleges that Citimortgage incorrectly reported a false principal amount to the credit reporting bureaus. (Am. Compl. ¶¶ 330). Plaintiff further claims that Citimortgage used false representations and deceptive or misleading representations or means to collect or attempt to collect a debt. (Am. Compl. ¶ 331).

Citimortgage makes several arguments in support of its Motion to Dismiss Count XV. It first argues that Plaintiff's claim under the FDCPA is barred by the statute of limitations. (Mot. To Dismiss 3–4). Citimortgage next argues that Count XV should be dismissed because Citimortgage is not a debt collector under the FDCPA, that Count XV fails to state a claim for a violation of 15 U.S.C. § 1692 as a matter of law, and finally that Plaintiff failed to plead fraud under 15 U.S.C. § 1692 with the particularity required under Fed. R.Civ.P. 9(B). (Mot. To Dismiss 4–6).

■■■ As to Citimortgage's first argument, in *Maloy v. Phillips,* 64 F.3d 607 (11th Cir.1995), the Eleventh Circuit Court of Appeals considered whether the statute of limitations for an FDCPA action commenced on the date the debt collection letter was mailed to the debtor, or the date the letter was received. *Id.* at 608. The Eleventh Circuit held that the date of mailing was the debt collector's last opportunity to comply with the FDCPA, and that the date of mailing was a better and more practical approach because it provided a date that was easy to determine, ascertainable by both parties, and easily applied. *Id.* Moreover, where statements concerning the status of a debt are new communications concerning an old claim, the statements do not start a fresh statute of limitations period. *See Nutter v. Messerli & Kramer, P.A.,* 500 F.Supp.2d 1219 (D.Minn.2007).

Plaintiff alleges that Citimortgage's first violation of 15 U.S.C. § 1692 occurred in March 2008. (Am. Compl. ¶ 41). Plaintiff's Complaint was filed on April 7, 2009, more than one year from the date of the alleged violation, exceeding the one-year period within which to bring claims under

the FDCPA. Thus, Plaintiffs's Complaint was not brought within the limitations period. However, even if Plaintiff's claim was timely, Count XV should also be dismissed for the reasons stated below.

■ Citimortgage next argues that Count XV should be dismissed because Citimortgage is not a "debt collector" under the FDCPA. The Court agrees with Citimortgage. In order to plead adequately under the FDCPA, the Plaintiff must sufficiently allege that Chase is a "debt collector." *See Monroe v. CitiMortgage, Inc.*, 2007 WL 1560194 at *2 (M.D.Fla. May 29, 2007). The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Under the FDCPA, consumer's creditors, a mortgage servicing company, or an assignee of a debt are not considered "debt collectors," as long as the debt was not in default at the time it was assigned. *See Monroe*, 2007 WL 1560194 at *2 (citing *Belin v. Litton Loan Servicing, L.P.*, 2006 WL 1992410 at *2 (M.D.Fla.2006)).

Plaintiff admits that Citimortgage was the mortgage servicing company servicing Plaintiff's mortgage. (Am. Compl. ¶¶ 39–40). Therefore, by Plaintiff's own admission, her claims under 15 U.S.C. § 1692 fail as a matter of law. Since Citimortgage was the mortgage servicing company servicing Plaintiff's mortgage, it cannot be liable as a "debt collector" under 15 U.S.C. § 1692.

Finally, Citimortgage argues that Plaintiff fails to specifically identify how the alleged wrongful conduct violates 15 U.S.C. § 1692, and that Plaintiff failed to plead fraud under 15 U.S.C. § 1692 with

the particularly required under Fed. R.Civ.P. 9(B). The Court will not address those arguments, since it has already found that Citimortgage is not a "debt collector" as contemplated by 15 U.S.C. § 1692. and therefore cannot be liable to Plaintiff for any violations of the FDCPA. Accordingly, Count XV is dismissed with prejudice.

## J. Florida Consumer Collection Practices Act Against Citimortgage (Count XVI)

■ In Count XVI, Plaintiff asserts that she is entitled to relief against Citimortgage under the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq.* Plaintiff alleges that Citimortgage is liable under provisions stating that "in collecting a consumer debt, no person shall … claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist." (Am. Compl. ¶ 338). Citimortgage argues that the Court should dismiss Count XVI because Citimortgage was at all times attempting to collect a valid debt. (Mot. to Dismiss 7–8). The Court agrees with Citimortgage.

In Citimortgage's Motion to Dismiss, it argues that on the face of the Amended Complaint, Olympia never applied the alleged payment of $38,846.90 to Plaintiff's account balance, before Citimortgage started servicing the mortgage. (Am. Compl. ¶¶ 42–43). Citimortgage argues that since the $38,846.90 was never credited to Plaintiff's account, it was proper that Plaintiff's account balance included that amount. (Mot. to Dismiss 7). By extension Citimortgage argues that since the principal amount of the mortgage was accurate, the amount of interest charged on the mortgage was accurate, and the

amount reported to the credit reporting agencies was also accurate. *Id.*

In her Response to Citimortgage's Motion to Dismiss, Plaintiff contends that when she began receiving mortgage statement from Citimortgage, reflecting an allegedly inaccurate principal amount due, she notified Citimortgage that she paid $38,846.90 to Olympia. (Pl.'s Resp. to Mot. to Dismiss 6). Plaintiff further states that Citimortgage knew or should have known of its FCCPA violations. *Id.* However, Plaintiff concedes that Olympia never credited the alleged $38,846.90 to Plaintiff's account, before Citimortgage started servicing the account. (Am. Compl. ¶ 42). Since by Plaintiff's own admission the $38,846.90 was never credited to her account by Olympia, Citimortgage properly relied on an accurate account balance when reporting, the amount due to the credit agencies.

Looking at all of the facts pled in Count XVI of Plaintiff's Amended Complaint, Plaintiff alleges that Citimortgage attempted to collect a debt that it knew was invalid. However, the Amended Complaint also shows that Citimortgage in fact did not know that the debt was invalid because they received statements on which they reasonably relied. Thus, the Amended Complaint itself is contradictory. Citimortgage could not have engaged in FCCPA violations since, according to its records, the $38,846.90 was rightfully owed and Plaintiff has failed to plead any facts which show otherwise. Instead Plaintiff points the Court to paragraph 42 of her Amended Complaint, where Plaintiff restates her conclusion that "Plaintiff notified Citimortgage that she paid $38,846.90 to Olympia." (Am. Compl. ¶¶ 41–42).

■ Moreover, even if the Amended Complaint were not self-contradictory, simply alleging that Citimortgage knew that the debt it was attempting to collect was invalid is not enough. When pleading a case under the FCCPA. Plaintiff must plead facts that show how Citimortgage had knowledge. Plaintiff does not state who she spoke with, the dates on which she notified Citimortgage, or how they were notified. *See Kaplan v. Assetcare, Inc.,* 88 F.Supp.2d 1355, 1363 (S.D.Fla. 2000) (pleading a FCCPA claim, a party must allege "knowledge or intent by the debt collectors in order to state a cause of action.") Simply pleading that Defendant had knowledge is not enough. Under Florida law, "the use of the word 'knows' requires actual knowledge of the impropriety or overreach of a claim." *In re Cooper,* 253 B.R. 286, 290 (N.D.Fla. 2000). A pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" will not survive a "motion to dismiss." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Accordingly, Defendant's Motion to Dismiss Count XVI is granted with prejudice.

## IV. CONCLUSION

Accordingly, after careful review and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED, and DECREED** as follows:

1. Chase and Chase Home Finance's Motion to Dismiss (D.E. # 41) Counts **I through VII, XIII, and XIV** of the Amended Complaint be, and the same is hereby **GRANTED WITH PREJUDICE.**

2. Citimortgage's Motion to Dismiss (D.E. # 49) Count **XV and XVI** of the Amended Complaint be, and the same is hereby **GRANTED WITH PREJUDICE.**

3. The Court dismisses Counts **VIII and IX** *sua sponte* **WITH PREJUDICE.**

4. Jurisdiction is retained for an adjudication of fees and costs.